UNITED STATES  DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------x          20-CR-6032(DGL)
UNITED STATES OF AMERICA,

vs.
                                     Rochester, New York
MICHAEL TYO,                         July 7, 2022
            Defendant.               11:20 a.m.
--------------------------x
**SENTENCING**

                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DAVID G. LARIMER
                 UNITED STATES DISTRICT JUDGE


                    TRINI E. ROSS, ESQ.
                    United States Attorney
                    BY:  KATELYN E. HARTFORD, AUSA
                    100 State Street
                    Suite 500
                    Rochester, New York 14614

FOR DEFENDANT:      THE SCIBETTA LAW OFFICE
                    BY:  MICHAEL P. SCIBETTA, ESQ.
                    2000 Winton Road South
                    Building 4, Suite LL5
                    Rochester, New York 14614

ALSO PRESENT:       JENNIFER FISH, U.S. PROBATION OFFICER


COURT REPORTER:     Diane S. Martens
                    dimartens55@gmail.com

U.S. vs. Tyo - 20-CR-6032

**P R O C E E D I N G S**

        *         *         *

   (**WHEREUPON,** the defendant is present.)

11:21AM   5   **THE COURT:** Good morning, Mr. Scibetta.

  6   **MR. SCIBETTA:** Good morning, Judge.

  7   **MS. HARTFORD:** Good morning, your Honor.

  8   **THE COURT:** Ms. Hartford.

  9   And Mr. Tyo.

11:21AM   10   **THE DEFENDANT:** Good morning.

  11   **THE COURT:** The matter is scheduled for sentencing today

  12 based on Mr. Tyo's plea to a plea agreement almost a year --

  13 almost two years ago in July of 2020.

  14   Parties ready to proceed?

11:21AM   15   **MS. HARTFORD:** Yes, your Honor.

  16   **THE COURT:** The Court is, as well.

  17   A few matters to discuss. But, as I said, Mr. Tyo

  18 pleaded guilty to a three-count information charging two bank

  19 robberies and an attempted robbery back in August of 2019.

11:21AM   20   By statute, each of those crimes carry a potential

  21 maximum sentence of up to 20 years in prison.

  22   There was a plea agreement.

  23   The first robbery related to a Citizens bank in

  24 Rochester on South --

11:22AM   25   **THE DEFENDANT:** Can I -- sorry to interrupt you. I had

3

U.S. vs. Tyo - 20-CR-6032

11:22AM   1   a meeting with, with a new lawyer yesterday, Jason Abbott.  I

          2   don't know if you received an email from him.

          3       **MR. SCIBETTA:**  I didn't get an email from Mr. Abbott.  I

          4   did speak to him this morning.

11:22AM   5       **THE COURT:**  I'm sorry?

          6       **THE DEFENDANT:**  Spoke to him.

          7       My other attorney that was supposed have happened, she's

          8   not responding to my calls any more.  I'm still, I'm still

          9   trying to have another motion filed.  I have almost retained

11:22AM  10   this lawyer.  Aid I had a --

         11       **THE COURT:**  Almost retained doesn't count for much.

         12       So what are you saying to me?

         13       **THE DEFENDANT:**  I would like to file a second motion to

         14   take the plea back.  And I should have new counsel very soon.

11:23AM  15       **THE COURT:**  Well, you said that a month ago.  You had

         16   this woman.

         17       **THE DEFENDANT:**  That's something I --

         18       **THE COURT:**  You --

         19       **THE DEFENDANT:**  That should have already happened but

11:23AM  20   external circumstances I can't control.

         21       **THE COURT:**  If she exists.

         22       **THE DEFENDANT:**  She exists.

         23       **THE COURT:**  She has not filed anything and she lives in

         24   Puerto Rico apparently.

11:23AM  25       **THE DEFENDANT:**  But she's out of the picture now because

U.S. vs. Tyo - 20-CR-6032

11:23AM  1   she's not picking up my calls.

2        **THE COURT:**  Well, there may be a reason for that.  No.

3   This matter's been set for sentencing.  It has been adjourned

4   and it's been adjourned --

11:23AM  5        **THE DEFENDANT:**  I have --

6        **THE COURT:**  And I just get the feeling you don't want to

7   be sentenced.  You filed motions --

8        **THE DEFENDANT:**  I want to take this plea back, sir.

9        **THE COURT:**  You filed a motion to withdraw the plea.  We

11:23AM  10  had a hearing on it and I denied the motion.  And I can't

11  think of anything that's going to change my mind if you file

12  a second or third motion.

13       **THE DEFENDANT:**  Yeah but the motion wasn't, it didn't

14  have everything that I was -- that was supposed to have been

11:24AM  15  there.

16       **THE COURT:**  Well --

17       **THE DEFENDANT:**  There's a myriad of different things

18  that should have been in that motion.

19       **THE COURT:**  Well, that should have been raised by you or

11:24AM  20  by somebody at the time the motion was argued.

21       **THE DEFENDANT:**  I have raised my --

22       **THE COURT:**  It was argued.

23       **THE DEFENDANT:**  -- my concerns.  Obviously a I need new

24  representation to --

11:24AM  25       **THE COURT:**  No.  The Court went through in that motion

U.S. vs. Tyo - 20-CR-6032

11:24AM 1   extensive reasons why the Court was denying the motion in

2   terms of the timeliness of its filing and the detailed plea

3   agreement and the admissions you made at the time.  So the

4   Court denied that motion.  Mr. Tyo --

11:24AM 5      **THE DEFENDANT:**  I mean, this would just save a lot of

6   time not having to appeal it.

7      **THE COURT:**  Mr. Tyo, you feel compelled to interrupt me.

8   I'll hear what you have to say but when I'm speaking --

9      **THE DEFENDANT:**  Yes, sir.  Yes, sir.

11:24AM 10     **THE COURT:**  -- courtesy would demand that you listen.

11      The Court ruled on that extensively.  If you feel

12   aggrieved, I guess you can seek to appeal that at the time.

13      But I see no reason to adjourn a sentence with this --

14   it's later than an 11th hour request for an adjournment.  You

11:25AM 15   know, you were directed, this woman that you mentioned, she

16   was directed, if she was going to represent you, to file a

17   letter.  And that applies to any new counsel.

18      This is your second lawyer now.  Mr. Ciccone, who

19   represented you before, is not here.  Mr. Scibetta, a very

11:25AM 20   able counsel who's appeared in this court many times, is here

21   to represent you.  And we are proceeding with the sentence

22   today.

23      Understood?

24      **THE DEFENDANT:**  I mean, does anything I have to say

11:25AM 25   matter?

U.S. vs. Tyo - 20-CR-6032

11:25AM   1    **THE COURT:**  In terms of adjourning the sentence, no.

2    We're going ahead.  I mean, this thing's been pending for

3    over two years.

4    **THE DEFENDANT:**  I want to write -- I want a motion to be

11:25AM   5    filed that is, that has all the myriad things that should

6    have been in there the first time.  I'm not asking for an

7    above and beyond.  I'm -- I just want to file another motion.

8    And I have a new -- I'm about to retain new counsel.

9    **THE COURT:**  You've been telling me --

11:26AM   10    **THE DEFENDANT:**  I realize this has been a dragged-out

11    thing and I really -- you're probably sick of seeing my face

12    at this point.  I probably would be, as well.  But I really

13    want to be able to file a motion that has everything that's

14    supposed to be in there, rather than have to put this in an

11:26AM   15    appeal.  Just saves everybody time to let me retain this new

16    counsel.

17    **THE COURT:**  No.

18    **THE DEFENDANT:**  I --

19    **THE COURT:**  Denied.  You have counsel.  This is the

11:26AM   20    second lawyer.  You have filed that motion.  You've not

21    indicated to me -- you know, you could have sent me a letter,

22    saying, judge, here's a new motion I want to file.

23    **THE DEFENDANT:**  I don't know your address.  I didn't

24    even know that was a possibility.  Can you give me one week

11:26AM   25    to send you that.  I don't even have your address.  I can't

U.S. vs. Tyo - 20-CR-6032

11:27AM 1  get a hold of my lawyer.  I can't even call this man.  And I

2  don't have any resentment with him personally but business

3  wise, in terms of this whole juncture, I can't even get a

4  hold of him.  And I'm not trying to raise my voice or have

11:27AM 5  any disrespect towards you.

6       **THE COURT:**  Yeah, you are.

7       **THE DEFENDANT:**  It's just the situation I feel like I

8  should be able to write a real motion, rather than have a

9  motion that's already written just to get denied.  He

11:27AM 10  probably just wanted me off the docket.  I probably would

11  want me off the docket, too.  And I don't have no resentment

12  toward anybody here.  But I feel like I should be able to

13  write a real motion to take back this plea that I think has a

14  laundry list of things wrong with it.

11:27AM 15      **THE COURT:**  All right.  Mr. Tyo, you don't have to raise

16  your voice.

17      **THE DEFENDANT:**  I'm not trying to raise my voice.

18      **THE COURT:**  I understand.

19      **THE DEFENDANT:**  That was not my intention.

11:27AM 20      **THE COURT:**  Well, you are.

21       I don't know how many times I can say it.  A motion was

22  filed on your behalf to withdraw the plea.  I went through a

23  lengthy list of why that motion was not proper.  Making a

24  motion to withdraw a plea that was made in open court under

11:28AM 25  oath --

U.S. vs. Tyo - 20-CR-6032

11:28AM   1      **THE DEFENDANT:**  No, it was not made in open court.  It

2    was on a Zoom conference that my face does not even appear

3    on.

4        **THE COURT:**  You're right.  It was a court appearance but

11:28AM   5    in light of the pandemic, it was in a Zoom.

6        **THE DEFENDANT:**  Yeah.  And this pandemic has a laundry

7    list of things wrong with the whole -- how everything was

8    conducted.

9        **THE COURT:**  No.

11:28AM  10      **THE DEFENDANT:**  And it would just be a lot easier for

11   everybody if you would give me a possibility to write another

12   motion.  I'll write it myself if I can't -- but I'm going to

13   retain this lawyer.  I have the money now.  I just sold my

14   car.

11:28AM  15      **THE COURT:**  Well, we are proceeding to sentence.  Your

16   request to adjourn the sentence, it appears to me you've been

17   interested in adjourning this sentence several times.  We

18   appeared a month ago.

19      **THE DEFENDANT:**  That wasn't enough time.  I told you

11:28AM  20    before that that wasn't going to be enough time.

21      **THE COURT:**  Mr. Tyo.

22      **THE DEFENDANT:**  It's out of my control but what --

23      **THE COURT:**  Mr. Tyo.

24      **THE DEFENDANT:**  -- I told a friend -- she used to be a

11:28AM  25    good friend of mine.  Now she just ghosted me and I can't

U.S. vs. Tyo - 20-CR-6032

11:28AM 1  control this.  And probably seems out of the realm of

2  possibility that that even was real but it was.  She -- I had

3  multiple conversations with her.  She was going to come back.

4  She said she'd been wanting to have -- to have a doorway to

11:29AM 5  get into federal experience for the longest time.  She is

6  working for her family.

7      THE COURT:  I'm not sure this would have been the best

8  way --

9      THE DEFENDANT:  At least I can trust her.  At least I

11:29AM 10 know, like, I mean, if -- I have the money.  I can retain

11 this lawyer.  I just need a little bit more time and I'm

12 really not trying to appear disrespectful.  I'm really not.

13     THE COURT:  Mr. Tyo, I deny your request for another

14 adjournment to get another lawyer to file another motion

11:29AM 15 that's already been denied.

16     We are proceeding to sentence.  End of discussion.

17     I think I was describing the types of bank robberies,

18 Citizens Bank in Buffalo is the second robbery that Mr. Tyo

19 engaged in.  Removed $1,800 from the tellers there after some

11:30AM 20 threats.

21     Same day attempted to rob another bank up in Buffalo,

22 Niagara Falls Boulevard but did not receive any money.

23     The plea agreement, which was a thorough document,

24 reviewed the facts.

11:30AM 25     The parties agree that the base offense level would be

U.S. vs. Tyo - 20-CR-6032

11:30AM 1   20.  There would be a 2-point enhancement for robbing a

2   federal institution.

3       There would be another 2-point enhancement because there

4   was a threat of death.

11:30AM 5       Because there were multiple crimes, there was some

6   so-called grouping.

7       But the result was that the Guideline range for Mr. Tyo,

8   with a very high criminal history of V, was 92 to 115 months.

9       Turns out the presentence report determined that the

11:31AM 10  Guideline range was somewhat higher, based on an analysis of

11  Mr. Tyo's lengthy criminal history.  The presentence report

12  indicated that the Guideline range should be 100 months to

13  125 months.

14      So that's where we are in terms of the Guidelines.

11:31AM 15      The Court will acknowledge I did receive from Mr.

16  Ciccone, prior counsel, a statement with respect to

17  sentencing factors indicating there were no objections to the

18  presentence report.  That was filed back over a year ago on

19  March 3, 2021.  Importantly, that letter contained

11:32AM 20  several letters of support by various friends and associates

21  of Mr. Tyo.

22      The plea agreement did provide, although the Guidelines

23  were 92 to 115 months, the plea agreement provided for the

24  right to ask for a sentence outside the Guidelines, which is

11:32AM 25  what Mr. Ciccone requested.  It was a detailed filing which I

U.S. vs. Tyo - 20-CR-6032

11:32AM   1    have reviewed then and I have reviewed again.

  2      When Mr. Ciccone was relieved.  Mr. Scibetta helpfully

  3    stepped in.

  4      And I think, Mr. Scibetta, you indicated to the Court in

11:33AM   5    a filing that you had no additional objections or matters

  6    relating to the presentence report; is that correct?

  7      **MR. SCIBETTA:**  That's correct, Judge.

  8      **THE DEFENDANT:**  I don't even think I had a presentence

  9    report.  It came and then it left.  Said I couldn't do it

11:33AM   10    that day.

  11      **THE COURT:**  Well, I was about to get to that.

  12      The government has also filed an amended statement with

  13    respect to sentencing factors indicating it's bound by the

  14    Guidelines in the plea agreement but noted there was an

11:33AM   15    overlap of some months.

  16      So, Mr. Tyo, the rules require that I make sure you have

  17    received a copy of the presentence report and have reviewed

  18    it and have no objections to it.

  19      A    I have not received a copy of the presentence

11:34AM   20    report and I have massive objections to it.

  21      **THE COURT:**  Well, are you saying neither Mr. Ciccone nor

  22    Mr. Scibetta gave you a copy of the presentence report or

  23    discussed it?

  24      **THE DEFENDANT:**  No.

11:34AM   25      **THE COURT:**  You never got one from Mr. Ciccone?

U.S. vs. Tyo - 20-CR-6032

| | | |
|---|---|---|
| 11:34AM | 1 | **THE DEFENDANT:**  Mm-mm. |
| | 2 | **THE COURT:**  I think he reference that. |
| | 3 | **PROBATION OFFICER FISH:**  Judge, if I could briefly. |
| | 4 | Judge, A copy of the original presentence report was |
| 11:34AM | 5 | mailed to the defendant at the Monroe County jail |
| | 6 | December 7th, 2020. |
| | 7 | And a copy of the revised presentence report was mailed |
| | 8 | to the defendant at the Monroe County jail on March 10th, |
| | 9 | 2021. |
| 11:35AM | 10 | **THE COURT:**  This is the first time, Mr. Tyo, once again, |
| | 11 | you indicating you didn't receive something and probation |
| | 12 | routinely sends this -- |
| | 13 | **THE DEFENDANT:**  I never received it. |
| | 14 | **THE COURT:**  -- to individuals. |
| 11:35AM | 15 | **THE DEFENDANT:**  How am I supposed to know about |
| | 16 | theoretical probation sending a presentence report? |
| | 17 | **THE COURT:**  Mr. Tyo, when I'm talking, please wait. |
| | 18 | There's a presumption of regularity when probation mails |
| | 19 | things to inmates and since you're obviously trying to dodge |
| 11:35AM | 20 | having sentencing today. |
| | 21 | **THE DEFENDANT:**  I'm trying to -- |
| | 22 | **THE COURT:**  And Mr. Scibetta -- |
| | 23 | **THE DEFENDANT:**  -- file another motion. |
| | 24 | **THE COURT:**  I mean, Mr. Ciccone.  Let me find Mr. |
| 11:35AM | 25 | Ciccone's -- |

11:35AM  1      **THE DEFENDANT:**  There's so many things wrong with this

2   plea agreement.  I mean, I'll win.  I'll have a good shot on

3   the appeal so whatever.

4        **THE COURT:**  Let me just find Mr. Ciccone's filing.  Hang

11:36AM  5   on just a minute.

6        Mr. Ciccone gives a detailed summary in his statements

7   about his conversations with you why you allegedly did what

8   you did and so forth, and your alleged acknowledgement of

9   poor choices.

11:37AM  10      **THE DEFENDANT:**  Was that during the plea?

11      **THE COURT:**  (No response.)

12      **THE DEFENDANT:**  Are you saying it was during the plea?

13      **THE COURT:**  (No response.)

14      **THE DEFENDANT:**  What are you referring to right now?

11:37AM  15      **THE COURT:**  Mr. Ciccone's statement with respect to

16   sentencing factors.  All right.

17        Clearly indicates a lengthy conversation with you about

18   the entire matter.

19        So, I, accept probation's representation -- which is the

11:37AM  20   norm -- that a presentence report was mailed to you at the

21   jail, both the original report and the amended report.  So

22   I'll make that ruling that you did receive a copy of the

23   report.

24        Your lawyers -- two lawyers -- have reviewed the

11:38AM  25   agreement and have no objections to it.  So --

U.S. vs. Tyo - 20-CR-6032

11:38AM 1     **THE DEFENDANT:**  I guess just go along with the kangaroo

2     court.

3         **THE COURT:**  Well, don't make me find you in contempt.

4     You got enough problems.  You --

11:38AM 5     **THE DEFENDANT:**  Would that postpone the sentencing?

6         **THE COURT:**  -- made -- no.  Nice try.  All right.

7         So I find that the Guideline range, according to

8     probation is 100.

9         **THE DEFENDANT:**  How's your, how, how -- how are your

11:38AM 10    vacations going?

11        **THE COURT:**  Be quiet.  If you keep talking, you're going

12    to be removed from court which also is not going to stop the

13    sentencing.

14        The plea agreement, as I said, was a little lower range,

11:39AM 15    was 92 to 115 months.

16        So I find, after careful review and after listening to

17    counsel, there are no objections to the Guideline

18    calculations and since basically they're the same Guidelines

19    that the parties agreed to two years ago when the plea was

11:39AM 20    entered and the facts certainly support the Guidelines and

21    the adjustments.

22        So, I am prepared to proceed to sentencing with formal

23    sentencing.

24        I must give counsel and Mr. Tyo, if he wishes, a chance

11:39AM 25    to speak to what the sentence should be.

U.S. vs. Tyo - 20-CR-6032

11:39AM 1    Mr. Scibetta, I turn the matter over to you first.

2    **MR. SCIBETTA:**  Thank you, Judge.

3    Your Honor, it's been my impressions -- and this is not

4    a popular topic to bring up with Michael -- and I believe the

11:39AM 5    impressions of Mr. Ciccone, that there are some deep-seated

6    mental health issues that Michael is struggling with and I

7    know he touched upon those, Mr. Ciccone did, in his

8    memorandum with the Court.

9    At the time back in May of '21 when this memorandum was

11:40AM 10   submitted, it, it concluded -- or just above the conclusion

11   mentioned that he had been at the time incarcerated over a

12   year and a half ago, that he wasn't receiving, due to COVID,

13   appropriate mental health treatment.  We're now a year plus

14   removed from that.  That situation has not changed.

11:40AM 15   I personally think there are some untreated mental

16   health issues with Michael that are, in my opinion, pretty

17   apparent that's made it difficult to, at times, communicate

18   with one another, although he's always cordial and fairly

19   articulate.

11:41AM 20   But I have to concur with Mr. Ciccone's assessment that

21   Michael is not going to get the kind of treatment from a

22   Guideline sentence that his particular mental health issues

23   require.  He's still grieving and struggling from the death

24   of his brother.  He's from a broken home, with mental health

11:41AM 25   issues with both his mom and abandonment issues with his dad,

U.S. vs. Tyo - 20-CR-6032

11:41AM   1   and substance abuse issues with both, his own substance

2   abuse, self-medication, suicidal ideologies.

3       I would just implore the Court to take that into

4   consideration.

11:41AM   5       From all accounts, Michael has had extended periods

6   where he's sought appropriate treatment and been his old

7   self, as the letters you've referenced mention.  He's a good

8   guy.  He's troubled.  He's, he's struggling.  And it would be

9   my hopes that the Court would consider strongly a

11:42AM  10   non-Guideline sentence so that he can get treatment that he

11   needs because, otherwise, I think, he's going to be a lost

12   cause.  Prison is not going to help him.

13       Thank you.

14       **THE DEFENDANT:**  I mean, Ciccone's threatened me to be

11:42AM  15   moved out of the, out of --

16       **THE COURT:**  Mr. Tyo.

17       **THE DEFENDANT:**  -- if I didn't sign --

18       **THE COURT:**  Mr. Tyo.

19       **THE DEFENDANT:**  -- the mental health --

11:42AM  20       **THE COURT:**  Mr. Tyo, I'm not sure your lawyer is

21   finished yet.

22       **MR. SCIBETTA:**  I am done.  Thank you.

23       **THE COURT:**  Thank you.

24       **THE DEFENDANT:**  Mr. Ciccone --

11:42AM  25       **THE COURT:**  Mr. Tyo --

U.S. vs. Tyo - 20-CR-6032

11:42AM   1       **THE DEFENDANT:**  -- never --

2       **THE COURT:**  -- you have a right to speak.

3       **THE DEFENDANT:**  I don't have a right to speak

4    apparently.

11:42AM   5       **THE COURT:**  You have a right to speak now.

6       **THE DEFENDANT:**  I should be able to file another motion

7    and take back this plea.

8       **THE COURT:**  You have nothing else to say?

9       **THE DEFENDANT:**  I just had a meeting with a new lawyer

11:42AM  10    yesterday.

11       **THE COURT:**  But I think the time now is to speak about

12    sentencing and urge the Court, if you wish, as to what type

13    of sentence I should impose.

14       We stopped talking about your desire to file yet

11:43AM  15    another --

16       **THE DEFENDANT:**  What does it matter what I have to say?

17    I've already -- it's the whole vibe has already went to shit

18    so what the fuck.  Anything I say now is just going to look

19    like me trying to appease you and in reality what's that

11:43AM  20    going to do?  You know, if you want to throw the book at me,

21    throw the book at me, you know, it's...

22       **THE COURT:**  It's your choice, Mr. Tyo.  You have a

23    chance to speak now and if you choose --

24       **THE DEFENDANT:**  I should be able to file another motion.

11:43AM  25    You should give me, like, another 60 days to actually give me

U.S. vs. Tyo - 20-CR-6032

11:43AM  1   enough time to get a new lawyer so I can file another motion.

2   Or let this man write another motion with my -- intertwined

3   with what I actually want to say in it, rather than -- I

4   didn't -- I wasn't able to really put anything in it that I

11:43AM  5   really wanted to in the last motion.  I wasn't really

6   included.  And I'm not sure if that's his -- I think it was

7   just the circumstance because for some reason I could not

8   even get a hold of him.  I don't think that's his fault.  I

9   think it's just something wrong with the telephone line.  But

11:44AM  10  every time I try to call, it gives me an indication that it's

11  a three-way call and somebody else is on.  And I'm, in fact,

12  calling from my debit account.  I have money in my debit

13  account all the time and I can never get a hold of him.

14      MR. SCIBETTA:  Judge, I can confirm that Michael has

11:44AM  15  tried on numerous occasions to get through.  Our office

16  manager gets the call and the call gets terminated on the

17  jail's end.  It --

18      THE DEFENDANT:  All I want is a one chance to be able to

19  submit a motion, a real motion.

11:44AM  20      MR. SCIBETTA:  It's like a third-party call.

21      THE DEFENDANT:  I'll have new counsel soon enough.  I

22  tried to ask you last time that wasn't going to be enough

23  time.  This was like three weeks or whatever, three and a

24  half weeks.  At that time I thought she was going to come

11:44AM  25  through.  Every indication was that she was going to be my

U.S. vs. Tyo - 20-CR-6032

11:44AM   1   lawyer.  It seems ridiculous and outlandish but it was the

2   truth.

3       **THE COURT:**  Yes, it did.

4       **THE DEFENDANT:**  It was the truth.

11:44AM   5       **THE COURT:**  Anything else you wish to say?

6       **THE DEFENDANT:**  I guess it doesn't really matter what I

7   have to say but I have so many things I'd like to say.

8       **THE COURT:**  But you choose not to, I guess.

9       **THE DEFENDANT:**  Is that the choice?  Choice to?

11:45AM  10       **THE COURT:**  All right.  Mr. Tyo, I guess, has finished

11   what he thinks he'd like to say and there's nothing he wishes

12   to say further.

13       And if he did wish to say anything further, I would give

14   him that opportunity now.

11:45AM  15       **THE DEFENDANT:**  (No response.)

16       **THE COURT:**  But hearing nothing --

17       **THE DEFENDANT:**  I suppose I'll just start selling

18   (phonetic) silence with violence.

19       **THE COURT:**  You what?

11:45AM  20       **THE DEFENDANT:**  Nothing.

21       **THE COURT:**  Probably not the best time to attempt humor,

22   Mr. Tyo.

23       **THE DEFENDANT:**  I mean, humor is all that gets you by

24   these days.

11:45AM  25       **THE COURT:**  All right.  Mr. Tyo having completed his

U.S. vs. Tyo - 20-CR-6032

| | | |
|---|---|---|
| 11:45AM | 1 | remarks, Ms. Hartford, anything the government wishes to add |
| | 2 | to the mix here? |
| | 3 | **MS. HARTFORD:**  Yes, your Honor. |
| | 4 | Just a few things I want to address since the defendant |
| 11:45AM | 5 | has brought them up. |
| | 6 | As far as the opportunity to file another motion, as the |
| | 7 | Court recognized, and would be reflected in the docket in |
| | 8 | this case, the motion was filed, arguments were heard on it, |
| | 9 | the defendant was present for those arguments.  I believe it |
| 11:46AM | 10 | was by Zoom but he was present.  He did not have any of these |
| | 11 | problems with the motion at that time.  It was not until |
| | 12 | after the Court ruled that he was dissatisfied with the |
| | 13 | motion.  The Court has been beyond -- |
| | 14 | **THE DEFENDANT:**  What was I supposed to do? |
| 11:46AM | 15 | **THE COURT:**  Mr. Tyo. |
| | 16 | **THE DEFENDANT:**  Come up with a theoretical motion -- |
| | 17 | **THE COURT:**  Mr. Tyo. |
| | 18 | **THE DEFENDANT:**  -- that some guy entered.  Like what was |
| | 19 | I supposed to have said? |
| 11:46AM | 20 | **THE COURT:**  Mr. Tyo, you're not doing yourself any good. |
| | 21 | **THE DEFENDANT:**  Just jumping in a kangaroo court. |
| | 22 | **THE COURT:**  Mr. Tyo. |
| | 23 | **THE DEFENDANT:**  That's all the federal courts are. |
| | 24 | **THE COURT:**  Mr. Tyo, you keep interrupting the Court. |
| 11:46AM | 25 | **THE DEFENDANT:**  This whole fucking system is a bunch of |

U.S. vs. Tyo - 20-CR-6032

11:46AM  1  fucking horseshit.  That's the whole fucking thing.

2      **THE COURT:**  Mr. Tyo, if you --

3      **THE DEFENDANT:**  You ever see The Dark Knight Rises?  You

4  ever seen that fucking movie?

11:46AM  5      **THE COURT:**  Mr. Tyo, if this continues, I'll have you --

6      **THE DEFENDANT:**  Check that movie out after you -- when

7  you go on your next vacation.

8      **THE COURT:**  Mr. Tyo.

9      **THE DEFENDANT:**  All right?

11:47AM  10      **THE COURT:**  Mr. Tyo.

11      **THE DEFENDANT:**  And have a good leisurely stroll.

12      **THE COURT:**  Mr. Tyo, you're going to be removed from

13  court.  If you want that to happen --

14      **THE DEFENDANT:**  Where would I go after that?  Just like

11:47AM  15  an undisclosed location where you can, you know, torture

16  people and shit?

17      **THE COURT:**  Mr. Tyo, it's in your best interest just to

18  remain silent, let the prosecutor finish, and I will do my

19  sentence and --

11:47AM  20      **THE DEFENDANT:**  Well, she -- I can't present an argument

21  to her fucking bullshit?  Or horseshit?

22      **THE COURT:**  Mr. Tyo, I'll give you one last warning.

23      Please remain silent or you're going to be removed from

24  the court and give up your right to be present in court.

11:47AM  25      **THE DEFENDANT:**  Where do I go after that?

U.S. vs. Tyo - 20-CR-6032

11:47AM    1    **THE COURT:**  You go into the jail there.  You go back to

2   Monroe County.

3      **THE DEFENDANT:**  And what happens?

4      **THE COURT:**  And you can tell all the people how we

11:47AM    5   treated you badly over here.  I don't care where you go.

6      Do you wish to stay here and hear the sentence or --

7      **THE DEFENDANT:**  No, I don't want to hear the sentence.

8   I think this is a bunch of fucking crap.

9      **THE COURT:**  All right.  I ask the Marshals to remove

11:48AM   10   Mr. Tyo.  He's given up his right to participate in the

11   proceedings by repeated interruptions, vulgar comments that

12   could be taken as threats to the Court.  And I order him

13   removed.

14      (WHEREUPON, defendant removed from courtroom.)

11:48AM   15      **THE COURT:**  I think the record speaks for itself but

16   Mr. Tyo repeatedly interrupted the Court after numerous

17   warnings and also has interrupted Ms. Hartford and has given

18   very strong vulgar language as to his opinion of the

19   proceedings here.

11:48AM   20      And I'll speak to the mental health issue in a minute.

21      So, Ms. Hartford, I guess you have the floor.

22      **MS. HARTFORD:**  Thank you, your Honor.

23      **THE COURT:**  If you wish.

24      **MS. HARTFORD:**  I'll try to be brief because at this

11:49AM   25   point the matter's been pending for a long time.  The court's

U.S. vs. Tyo - 20-CR-6032

11:49AM   1   familiar with the facts of the case.

2        **THE COURT:**  Quite.

3        **MS. HARTFORD:**  However, I don't want to use today's

4    length of the proceeding as a reason to not respond.

11:49AM   5        So thank you, Judge.

6        I think I was just saying that there was a hearing.  The

7    defendant had the opportunity at that hearing to raise any

8    grievances he had with the motion.  He didn't do so, at least

9    to the government's recollection.  It wasn't until after the

11:49AM  10   ruling that he claimed that the motion was not satisfactory

11   to him, which, I guess we'll move on from.

12        He's been, in the government's opinion, somewhat

13   manipulative throughout this entire process in trying to

14   obtain a result that he finds more favorable.

11:49AM  15        I'll note that he has -- well, I'm just going to move

16   forward with my request for sentencing, Judge.

17        **THE COURT:**  Sure.

18        **MS. HARTFORD:**  In a sentencing statement filed on

19   March 11th of 2021, the government noted that we are bound by

11:50AM  20   the Guidelines calculation made in the plea agreement and to

21   advocate for that as the Guidelines range.

22        The overlapping range of the Guidelines would be between

23   100 and 115 months.  But as the Court noted, and the defense

24   noted in their sentencing statement as well, that the

11:50AM  25   government is allowed to advocate for a sentence outside of

U.S. vs. Tyo - 20-CR-6032

11:50AM  1  the Guidelines range.  That may be appropriate in this case,

2  Judge.  I will leave it to the Court's discretion.

3  But the reasons why the government believes that a

4  lengthy sentence is appropriate and necessary in this case is

11:50AM  5  because this defendant is no stranger to the criminal justice

6  system.  He has a extremely lengthy criminal history and very

7  high criminal history score for most defendants I see in

8  federal court, but particularly for somebody who is only 34

9  years old.  He's had other opportunities to change his

11:51AM  10  behavior and has not done so.

11  These, these crimes, themselves, are not victimless

12  crimes, the bank robberies.  There are tellers who are

13  affected.  And the Court has presided over more of these

14  cases than I've handled but these kinds of crimes do have

11:51AM  15  consequences.

16  Reading from the first letter from the first robbery

17  just portions of that, he said:  "If I even glimpse a dye

18  pack, I will not hesitate to elevate the situation and you

19  will be the first casualty."

11:51AM  20  Later, in that letter he says:  "If I happen to get

21  caught because of you, when I get out of prison, I will

22  systematically destroy you and the people you love the most."

23  And, frankly, your Honor, that's been echoed a bit as

24  far as threatening language and retaliation as far as even

11:51AM  25  the language that you heard from the defendant today.

U.S. vs. Tyo - 20-CR-6032

11:51AM   1    I see no change in his demeanor, no willingness to do

2    better, no -- no acceptance that after this, things are going

3    to be different.  In fact, he has only demonstrated to the

4    Court that when things don't go his way, he will elevate the

11:52AM   5    situation.

6    And for all those reasons, I believe that a lengthy

7    sentence is appropriate to accomplish the factors in

8    Title 18, Section 3553(a), that is, taking into consideration

9    the nature and circumstances of the offense; the history and

11:52AM   10   characteristics of the defendant; the need for the sentence

11   imposed to reflect the seriousness of the offense; to promote

12   respect for the law -- which I argue the defendant has none,

13   less than none, if that's possible -- and to provide just

14   punishment for the offense; as well as to afford adequate

11:52AM   15   deterrence to criminal contact; to protect the public from

16   further crimes of the defendant; and to provide the defendant

17   with needed educational or vocational training, medical care

18   or other correctional treatment in the most effective manner.

19   And, Judge, being out of custody hasn't gotten him any

11:53AM   20   of that treatment.  He went to robbing banks and these

21   extremely violent threatening letters.  Perhaps the federal

22   Bureau of Prisons is the only place where he will get that

23   treatment.

24   So, thank you, your Honor.

11:53AM   25   **THE COURT:**  Thank you.

U.S. vs. Tyo - 20-CR-6032

11:53AM 1      Mr. Scibetta, anything else in light of the departure of

2      your client in response to Ms. Hartford or are we ready to

3      proceed?

4      **MR. SCIBETTA:**  Judge, I would just suggest that he's not

11:53AM 5      getting the treatment he needs.  I don't know if he's

6      inappropriately or under or not medicated at all but he

7      strikes me as an individual that is certainly not at his best

8      mentally today.

9      **THE COURT:**  Well, certainly not what the Court would

11:53AM 10     expect here.  And this is consistent, somewhat, with Mr.

11     Tyo's behavior throughout the case.  Although early on, you

12     know, he was respectful.  There were no problems when the

13     plea was taken.

14     So, I will turn to sentence.

11:54AM 15     You know, Mr. Tyo presents several sort of intersecting

16     issues and behavior.  It's not often I see people that are

17     convicted of virtually within a week or so, robbing two banks

18     and attempting to rob a third.

19     And Ms. Hartford accurately described the threatening

11:54AM 20     letters that he gave to tellers.  This was a pretty planned

21     robbery scheme, as I recall.  There was presentence reports,

22     some people observed him changing clothes and he got some

23     money out of this.

24     The Court has to consider all the sentencing factors

11:55AM 25     that Ms. Hartford mentioned.  And we might trip through some

U.S. vs. Tyo - 20-CR-6032

11:55AM   1   of them because I think they speak to what the sentence

2   should be here.

3        In terms of the nature and circumstances of the

4   offenses, you know, bank robberies, threatening tellers is

11:55AM   5   about as serious as you can get.  There's a 20-year max for

6   each count.  You know, that, in itself, I think, warrants a

7   significant punishment.

8        The history and characteristics of the defendant.  He is

9   a young man.  He's had some college.  He has some talent as a

11:55AM  10   writer.  But at that very young age, he has the highest

11   Criminal History Category:  VI.

12        And he keeps mentioning -- I mean, if he were here, I

13   would tell him he seems to blame, you know, the breakup of

14   his parents, the death of his brother.  Certainly the death

11:56AM  15   of a sibling is tragic but that happened, I think, 11 months

16   before this bank robbery spree.

17        Some of the crimes on Mr. Tyo's record have aspects of

18   violence.  He was on parole when this happened.  He still has

19   pending state charges.  I don't know what's going to happen

11:56AM  20   to them.

21        And he has heavy drug abuse history, cocaine, marijuana,

22   opiates.  He has been afforded numerous treatment programs

23   and he's failed out or booked out of all of them.

24        And, frankly, the same thing has happened with mental

11:57AM  25   health treatment.  He's been diagnosed with depression,

U.S. vs. Tyo - 20-CR-6032

11:57AM   1   anxiety, bipolar disorder.  But as I review the presentence

2   report, he's never completed a mental health treatment

3   program because he doesn't like group settings.  He wants to

4   have a private consultation.

11:57AM   5       Pretty much Michael Tyo does what he wants to do.  He

6   didn't want to come to court today, either.  That's sort of

7   consistent with his behavior.  If he wants to do something,

8   even if it's robbing a bank, he does it.

9       Part of the sentence must be for deterrence, also.

11:57AM  10   People, because they are upset, need money, they just can't

11   go down to the local bank and threaten tellers and rob the

12   banks.

13       You know, if I thought a sentence directing him to

14   engage in mental health treatment would end this behavior, I

11:58AM  15   would probably do it.  But it's not going to work.  I mean,

16   he just doesn't seem to have the ability to make good

17   judgments and accept the help that's been offered to him.  I

18   mean, I often have to represent there's serious consequences

19   for criminal conduct, consequences for threatening people.

11:58AM  20       You know, Michael doesn't seem to realize that if he has

21   problems, it's not his job to take it out on others.  He's

22   done nothing really to justify a lenient sentence and direct

23   that he participate in mental health problems.  You know,

24   life is hard.  There are difficult things to deal with.  He

11:59AM  25   seems to have issues with his parents and the death of his

U.S. vs. Tyo - 20-CR-6032

11:59AM  1   brother.

2        But there's this sort of pattern of blaming everybody

3   else now -- including this Court -- as to how unfairly he's

4   been treated.  I think he's been treated very fairly.  He has

11:59AM  5   tried to put off this sentencing for quite a while.

6        Just for the record, the report today was that he

7   refused the jail letter's request to come over here.

8   Claiming, quote, he didn't feel well.  Well, the Court issued

9   an order to bring him over here and I didn't see much signs

11:59AM  10   of his physical ailment.

11        I think getting him in a Bureau of Prisons facility,

12   he's apt to get much more mental health, the potential for

13   it, much more than if he's sitting here in a local jail.

14        So, is Mr. Tyo a lost cause?  If he were here, I would

12:00PM  15   say, you know, you're 33 now, do you want to live to be 43?

16   If he keeps up the way he's going to, refuses help and

17   treatment, I fear the worst.

18        But, unfortunately, he doesn't just have some mental

19   health issues.  He has drug issues and he has real propensity

12:00PM  20   to use violence when it suits his interest.  I think these

21   bank robberies are symbolic in that.  I think he's threatened

22   people in treatment facilities.

23        And, so, to the extent there's a request for a departure

24   from the Guidelines, I would deny that.

12:01PM  25        And I hereby impose the following sentence:  There are

12:01PM  1    three counts and each count, I impose a sentence of 100

2    months to run concurrently with each other for a total

3    aggregate sentence of 100 months.

4        I don't know if he wishes his sentence to be served at a

12:01PM  5    facility in any place in particular, Mr. Scibetta?  How about

6    close to this district?

7        **MR. SCIBETTA:**  I would put that request in, Judge.  His

8    mom is in the area.

9        **THE COURT:**  All right.  I will request that he serve his

12:01PM  10    sentence as close to the Western District of New York as

11    possible.

12        I'm going to place him on supervised release for 3 years

13    on each of the counts to run concurrently.

14        While on that release, he's not to commit any new,

12:01PM  15    federal, state or local crime.

16        He's prohibited from possessing a firearm.

17        Prohibited from possessing any controlled substance.

18        Drug testing is required.

19        And he must cooperate in the DNA sample.

12:02PM  20        There were six recommendations of special conditions.

21    And they're all important.  And I adopt them all.

22        Number one, that he participate in a program for

23    substance abuse, including testing and treatment, and I adopt

24    the exact language in that recommendation of special

12:02PM  25    condition one.

U.S. vs. Tyo - 20-CR-6032

12:02PM  1    I adopt the condition, I think it's listed as number six

2    in the special conditions, that he notify probation of any

3    opiate-based medication before it's filled.

4    Request number two is that he participate in mental

12:02PM  5    health treatment.  That is most important.  And I adopt the

6    specific language set forth in the probation department's

7    special recommendation.  It's my fervent desire that he take

8    that seriously and participate in it.

9    Recommendation number three, I adopt that language.

12:03PM  10   Recommendation number four, that he must provide

11   probation with access to any personal or financial

12   information because there's restitution payment that's going

13   to be ordered.

14   Recommendation number five is that he not incur any form

12:03PM  15   of debt as set forth there in the recommendations for special

16   conditions.

17   I find he has no ability to pay a fine because any

18   monies that he has would go toward restitution.

19   I hereby order restitution under the factors of

12:04PM  20   Section 3664(a).

21   He's to make restitution to the Citizens Bank located at

22   South Clinton Avenue in Rochester in the amount of $800.

23   And also another $1,800 restitution payment to a

24   different Citizens Bank located South park Avenue in Buffalo.

12:04PM  25   He's to make those payments according to the Bureau of

U.S. vs. Tyo - 20-CR-6032

12:04PM    1    Prisons Financial Responsibility Program.  And if he doesn't
           2    complete the restitution by the end of his sentence, it's to
           3    be made at a rate of at least 10 percent of his monthly gross
           4    income, should there be any when he is released.

12:04PM    5         There probably is a complaint that needs dismissing.
           6         **MS. HARTFORD:**  Yes, your Honor.
           7         I would move to dismiss the complaint.
           8         Also, did the Court -- I may have missed it -- did you
           9    order the special assessment of $300?

12:05PM   10         **THE COURT:**  About to do that.
          11         **MS. HARTFORD:**  Sorry, Judge.
          12         **THE COURT:**  I order a $100 special assessment on each of
          13    the counts for a total of $300.
          14         That is the sentence of the court.

12:05PM   15         And the plea agreement did provide for a giving up or
          16    waiver of the right to appeal, as long as the sentence was
          17    within the Guideline range.  This sentence of 100 months is
          18    squarely within the middle of the range anticipated in the
          19    plea agreement.  But, you know, there has been a motion to

12:05PM   20    withdraw the sentence, and that may well afford him the
          21    ability to complain and appeal about that.
          22         So, Mr. Scibetta, I trust you will take what steps, to
          23    the extent you can glean what your client wants, must be
          24    filed within the next 14 days.

12:06PM   25         It doesn't necessarily mean you have to represent him on

U.S. vs. Tyo - 20-CR-6032

12:06PM  1    appeal.  But if you wish to get out of that because the

2    Circuit tends to like point at counsel to stay on for appeal.

3    If you can't or won't do it do it, the Circuit certainly has

4    many lawyers that they can appoint to represent Mr. Tyo.  And

12:06PM  5    who knows, he may at some point, as he did with Mr. Ciccone,

6    decide to turn against you.

7         So, please protect his interest with the appeal and if

8    you can't, I'll file the appeal for him.

9         **MR. SCIBETTA:**  Thank you, Judge.

12:06PM  10        **THE COURT:**  Because it is within the waiver agreement, I

11    mean, I don't know what the Second Circuit would do relative

12    to any appeal.  All right.

13        I mean, it's an unhappy situation regardless.  He

14    certainly has engaged in very dangerous serious conduct but

12:07PM  15    he's obviously has some mental health issues and needs

16    possibly medication.

17        If there's nothing further, thank you.

18        **MS. HARTFORD:**  Thank you.

19        **PROBATION OFFICER FISH:**  Judge, I actually do have two

12:07PM  20    quick things.

21        Does the Court wish to order the statutory language

22    under 18 U.S.C. 3664(n) regarding the restitution while

23    incarcerated.  That language was in the recommendation.

24        **THE COURT:**  No, I think what I said was enough.

12:07PM  25        **PROBATION OFFICER FISH:**  And the second.  I may have

U.S. vs. Tyo – 20-CR-6032

12:07PM 1  missed this.  Did the Court order DNA testing?

2  **THE COURT:**  Yes.

3  **MR. SCIBETTA:**  I believe so.

4  **PROBATION OFFICER FISH:**  Thank you, Judge.

12:07PM 5  **THE COURT:**  Thank you, all.

6  We are in recess.

7  (WHEREUPON, proceedings adjourned.)

8

9                    *          *          *

10                    **CERTIFICATE OF REPORTER**

11

12          In accordance with 28, U.S.C., 753(b), I

13  certify that these original notes are a true and correct

14  record of proceedings in the United States District Court

15  of the Western District of New York before the

16  Honorable David G. Larimer on July 7, 2022.

17

18

19  S/ Diane S. Martens

20  Diane S. Martens, FCRR, RPR
    Official Court Reporter

21

22

23

24

25